# EXHIBIT 1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| DIANE ABBEY<br><br>                                Plaintiff,<br><br>  -v-<br><br>UNITEDHEALTHCARE INSURANCE COMPANY OF NEW YORK, AND UNITEDHEALTHCARE INSURANCE COMPANY,<br><br>                              Defendants. | Index No.<br>Date Purchased:<br><br>**SUMMONS**<br><br>Place of Trial:  New York County<br><br>The basis of venue is Plaintiff's domicile, Defendants' presence in the New York County, and the fact that the actions complained of occurred in New York County |

To the above-named Defendants:  UNITEDHEALTHCARE INSURANCE COMPANY OF NEW YORK, and UNITEDHEALTHCARE INSURANCE COMPANY.

      **YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's attorney within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: January 12, 2024
       New York, New York

                                            ABBEY SPANIER, LLP

                                            By:  _/s/ Julie Sullivan_____
                                                 Julie Sullivan
                                          212 East 39th Street
                                          New York, NY 10016
                                          (212) 889-3700
                                          jsullivan@abbeyspanier.com

                                          Attorneys for Plaintiff

Defendants' Addresses:

UNITEDHEALTHCARE INSURANCE COMPANY OF NEW YORK
2950 Expressway Drive South, Suite 240
Islandia, NY  11749-1412

UNITEDHEALTHCARE INSURANCE COMPANY
2950 Expressway Drive South, Suite 240
Islandia, NY  11749-1412

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| DIANE ABBEY<br><br>          Plaintiff,<br><br> -v-<br><br>UNITEDHEALTHCARE INSURANCE COMPANY OF NEW YORK, AND UNITEDHEALTHCARE INSURANCE COMPANY,<br><br>          Defendants. | Index No.<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

   Plaintiff Diane Abbey, by and through her attorneys, Abbey Spanier, LLP, alleges as follows:

## INTRODUCTION

   1. Plaintiff brings this action under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C.§ 1001, et seq., because of the improper denial of benefits by defendant.

## JURISDICTION AND VENUE

   2. This Court has jurisdiction of this action pursuant to 29 U.S.C. § 1132(e)(1).

   3. Venue is proper in this Court pursuant to 29 U.S.C. §1132(e)(2), as both defendants may be found within the New York County, and Plaintiff received all relevant medical care in New York, New York.

## PARTIES

4. Plaintiff, Diane Abbey ("Plaintiff" or "Abbey"), is and, at all relevant times, has been a "beneficiary," as defined in section 3(8) of ERISA, 29 U.S.C. §1002(8) of the TriNet HR IV, LLC Welfare Benefit Plan (the "Plan").

5. Defendant, UnitedHealthcare Insurance Company ("UHIC"), is a "named fiduciary," as defined in section 402 (a)(2) of ERISA, 29 U.S.C. §1102(a)(2), and a "fiduciary," as defined in section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A), of the Plan.

6. Defendant, UnitedHealthcare Insurance Company of New York ("UHNY"), is a wholly-owned subsidiary of UHIC, and is the legal entity that provides coverage under the Plan. These defendants, UHIC and UHNY, will be referred to together herein as "UH."

7. The Plan is fully insured, and benefits are provided to participants and beneficiaries under a group insurance contract entered into between TriNet, a single employer sponsor of benefit plans, and UH, which sets forth the benefits to which participants and beneficiaries are entitled under the Plan.

8. UH is the Plan's claims fiduciary and, in this capacity, processes claims submitted by eligible participants and beneficiaries.

## ADDITIONAL FACTS GIVING RISE TO PLAINTIFF'S ALLEGATIONS

9. Plaintiff was enrolled in the Plan, an "employee welfare benefit plan" as defined in section 3 (1) of ERISA, 29 U.S.C. §1002(1), at all times that she was medically treated by provider Dr. Mia Talmor ("Dr. Talmor"). Plaintiff's husband, Arthur N. Abbey, at all relevant times, was a participant in the Plan through TriNet HR IV, LLC ("TriNet"), the "administrator," as defined in section 3 (16)(A) of ERISA, 29 U.S.C.§1002(16)(A), and the "plan sponsor" as

4

defined in section 3(16)(B) of ERISA, 29 U.S.C. § 1002(16)(B), of the Plan. The Plan Number is 184514, and the ID Number is 939506399.

10. Plaintiff first saw Dr. Talmor for an initial consultation on May 19, 2021, because she had recently been diagnosed with cancer of the right breast. Plaintiff informed Dr. Talmor that she had had a mastectomy of her left breast in 1986, and left breast reconstruction with a saline implant in 1996. In 2015, Plaintiff had a reduction with implant exchange.

11. At the time of her May 19, 2021, consultation with Dr. Talmor, Plaintiff had determined, on the advice of her other treating doctors, to move forward with a right breast mastectomy four to six weeks after completing chemotherapy, and Plaintiff retained Dr. Talmor to perform immediate reconstructive surgery after the mastectomy.

12. Before performing breast reconstructive procedures on Plaintiff on September 14, 2021, Dr. Talmor received "Preauthorization" for these procedures from UH as an Out of Network provider. The preauthorization number was A131952768. The Plan defines "Preauthorization" as a "decision" by UH "prior to … receipt of a Covered Service [or] procedure" that "the Covered Service [or] Procedure … is Medically necessary."

13. On September 14, 2021, at Weill Cornell New York Presbyterian Hospital, Plaintiff had a mastectomy, and Dr. Talmor performed immediate breast reconstruction of Plaintiff's right breast. Dr. Talmor performed two reconstructive procedures on that date: CPT code 19357-Rt, which entails placing a tissue expander into the skin and pectoralis major muscles of the chest to increase the size and volume of the breast to make space for a permanent implant, and CPT code 15777-Rt., which involves placing a biologic implant to correct the soft tissue defect caused by the mastectomy procedure.

14. For the procedure CPT code 19357-Rt, Dr. Talmor charged Plaintiff $20,000, and for the procedure CPT code 15777-Rt, Dr. Talmor charged Plaintiff $5000. Plaintiff paid Dr. Talmor and submitted these charges to UH for reimbursement.

15. Despite the fact that these procedures were preauthorized by UH, UH only paid $5030.17 for the procedure CPT code 19357-Rt and $0.00 for the procedure CPT code 15777-Rt.

16. As demonstrated herein, under the Plan, UH should have reimbursed these approved procedures at the 80% percentile of the usual, customary, and reasonable charges ("UCR") for services provided in private physician practices, as reported by FAIR Health, Inc. in its UCR database. UH's reimbursement rate of 20% for these preapproved services, and especially its decision to reimburse procedure CPT code 15777-Rt at $0.00 demonstrates UH"s bad faith in processing Plaintiff's claim.

**Relevant Plan Provisions**

17. The Plan stipulates, under several provisions, that it must cover breast reconstructive procedures at the regular Plan rate. Section IX of the Plan, "Outpatient and Professional Services Y. Reconstructive Breast Surgery" states:

> We Cover breast reconstruction surgery after a mastectomy or partial mastectomy. Coverage includes: all stages of reconstruction of the breast on which the mastectomy or partial mastectomy has been performed; surgery and reconstruction of the other breast to produce a symmetrical appearance; and physical complications of the mastectomy or partial mastectomy, including lymphedemas, in a manner determined by You and Your attending Physician to be appropriate. We also Cover implanted breast protheses following a mastectomy or partial mastectomy.

18. The Plan also provides for coverage of "all stages of reconstruction of the breast on which mastectomy was performed" under the Women's Health and Cancer Rights Act of 1998, which further stipulates that "[t]he amount you must pay for such Covered Health Care

6

Services (including Co-payments, Co-Insurance and any deductible) are the same as are required for any other Covered Health Care Service."

19. The Plan's Certificate of Coverage also provides that Plaintiff could elect to have a non-Participating Provider, such as Dr. Talmor, perform the two necessary September 14, 2023 procedures. At page 31, the Schedule of Benefits states: "Non-Participating Provider benefits apply to Covered Services that are provided by a Non-Participating Physician or other Non-Participating Provider."

20. When a participant, such as Plaintiff, submits a claim, UH determines the "Allowed Amount" for the service as prescribed by the Plan. The Plan defines "Allowed Amount" as "[t]he maximum amount on which [UH's] Payment is based for Covered Services."

21. The Plan describes how it calculates the Allowed Amount for services provided by out of network providers at Section IV, under "Cost Sharing Expenses and Allowed Amount G. Allowed Amount. For non-Participating Providers." Section IV.G. of the Plan details how the Allowed Amount for reconstructive breast surgery procedures performed by a non-Participating Provider such as Dr. Talmor should be calculated, stating that "[w]hen Covered Services are received from an[sic] non-participating Provider, Allowed Amounts are determined, based on either…available data resources of competitive fees in that geographic area" or when "data resources of competitive fees in a geographic area are not available for the service, [UH] use[s] a gap methodology established by *OptumInsight* and/or a third party vendor that uses a relative value scale or methodology."

22. Importantly, Section IV.G. of the Plan also states that the "Allowed Amount for Non-Participating Providers" should "equate to approximately… the FAIR Health rate at the 80[th]

percentile." Clearly, UH did not adhere to Section IV.G. of the Plan when it processed Plaintiff's claim, paying only 20% of the amount Dr. Talmor charged.

23. In addition to being purportedly adopted and utilized by UH, the 80th percentile of the usual and customary charges for services provided in private physician practices, as reported by FAIR Health, Inc. in its UCR database has also been approved by the New York State Attorney General and the New York State Insurance Department. *See* NYCCR Tit. 10 Sec. 69-10.21.

24. UH's letters to Plaintiff, dated April 7, 2023 and June 25, 2023, similarly explain that "[y]our plan states that for Out-of-Network these services are covered at 80% of the eligible expenses after satisfying your annual deductible."

### UH Processed Plaintiff's September 14, 2021 Claim in Bad Faith

25. Under the terms of the Plan, Section IV.G. provides that UH will process claims at the 80th percentile of the FAIR Health rate when those rates are available. At all times relevant to this claim and this action, FAIR Health, Inc's UCR database had rates available for both services performed by Dr. Talmor on September 14, 2021, that is, for procedure CPT code 19357-Rt and procedure CPT code 15777-Rt, in Dr. Talmor's geographic area. Dr. Talmor performed the procedures at Weill Cornell New York Presbyterian Hospital.

26. As detailed in UH's December 6, 2021 Explanation of Benefits (the "EOB"), however, UH did not use the UCR amount readily available in FAIR Health, Inc.'s UCR database to determine the Allowed Amount for these procedures. Instead, the Allowed Amount for Dr. Talmor's services was determined using Data iSight, a third-party vendor, and fell woefully short of "the FAIR Health rate at the 80th percentile."

27. For pre-approved procedure CPT code 19357-Rt, which Dr. Talmor billed at $20,000, UH's Allowed Amount was only $5030.17, which the Plan paid. For pre-approved procedure CPT code 15777-Rt, which Dr. Talmor billed at $5000, UH's Allowed Amount was a shocking $0.00. By stating that the Allowed Amount for this pre-approved, necessary procedure was $0.00, UH adopted the unsupportable position that providers in Dr. Talmor's geographic area were performing highly specialized surgical procedures for free.

28. Following the September 14, 2021 reconstructive procedures, Dr. Talmor implanted both left and right prostheses for Plaintiff on November 30, 2021. Dr. Talmor charged $23,070.00 for these procedures, and UH reimbursed Plaintiff $21,427.00, which was almost 93% of what Dr. Talmor charged for these procedures. There was no justifiable reason for UH, when processing Plaintiff's claim for the September 14, 2021 services, to ignore the UCR amounts listed in FAIR Health, Inc.'s database, and use the heavily discounted rates supplied by Data iSight. UH acted in bad faith when it processed this claim using Data iSight's heavily discounted rates.

**Plaintiff Informally Contests UH's Processing of the September 14, 2021 Claim**

29. In response to Plaintiff's initial query as to why UH paid only 20 percent of Dr. Talmor's billed charges, UH wrote to Plaintiff and explained that because Dr. Talmor was a "non-network provider," under the terms of the Plan, UH did "not have a contract that controls the amount billed." UH claimed that after reviewing the amount charged by Dr. Talmor for these services, it had "found that this provider is charging a higher amount than what is typically charged and accepted." UH invited Dr. Talmor, to submit "medical records in an attempt to demonstrate that the service was extraordinarily complicated or difficult and warrants a

9

reimbursement amount higher than the Allowed Amount stated on your Explanation of Benefits, which uses information provided by Data iSight, a third-party vendor."

30. In response to UH's letter to Plaintiff, Dr Talmor wrote to UH to explain that CPT code 15777, which was denied in full by UH, "is very crucial in maintaining the implant to stay in place due to no breast tissue after mastectomy. This code should not have been denied and I ask that you reconsider this for payment. This procedure goes hand in hand with immediate breast reconstruction and is covered under insurance." Dr. Talmor further addressed UH's contention that she charged a higher amount than what is typically charged and accepted for both procedures by informing UH that her billed amounts were in line with those posted in FAIR Health, Inc.'s UCR database. She wrote, "[a]ccording to the Fair Health Consumer, for this medical cost, they state it should be billed at $17,798 for unilateral. This is not much different from what [Dr. Talmor] billed which is 20K and for CPT code 15777, Fair Health Consumer prices it at $4500.00 which [Dr. Talmor] submitted 5K, still not much of a difference." Dr. Talmor again "ask[ed] that United Healthcare reconsider the amount paid and therefore submit additional payment for this service."

31. Despite Dr. Talmor submitting evidence demonstrating that her rates were in line with those in FAIR Health, Inc.'s UCR database, UH continued to maintain that Dr. Talmor charged "much higher" rates than were typically charged, and that plastic surgeons on Manhattan's upper eastside were routinely performing complex procedures, such as CPT code 15777, for $0.00. Plaintiff asked Dr. Talmor to again write to UH and submit further proof demonstrating that the September 14, 2021 procedures were "extraordinarily complicated or difficult and warranted a reimbursement amount higher than the allowed amount."

10

32.     Dr. Talmor wrote to UH on February 28, 2023, on Plaintiff's behalf, to ask for additional payment, explaining that "[t]he patient had to use an out of network surgeon due to the type of procedure of nipple sparring [*sic*] mastectomy which only a few surgeons can perform."

**Plaintiff Appeals the Claims Decision**

33.     On March 30, 2023, Plaintiff requested that UH reconsider its decision of her claim for Dr. Talmor's September 14, 2021, services.  By letter dated April 7, 2023, UH delivered its Final Adverse Determination (the "Determination"), informing Plaintiff that it had reviewed her request and had determined not to increase the Allowed Amount for either procedure.  Most importantly, UH was now claiming that Dr. Talmor's September 14, 2021 services were processed at an "In Network" level of benefit.  This explanation directly conflicts with that detailed in UH's original EOB and its subsequent communications with Plaintiff, which stated that the Allowed Amounts for the two procedures were based on the fact that Dr. Talmor was an out of network provider and "processed using your network benefits."  It defies reason that the Allowed Amounts for these services remained unchanged despite the fact that on December 6, 2021, these amounts were purportedly determined based on Section IV.G. of the Plan, that is, "Cost Sharing Expenses and Allowed Amount G. Allowed Amount. For non-Participating Providers," and that on April 7, 2023, the Allowed Amounts were determined by processing the claim at an In Network level of benefit.  The Plan explains that these amounts will necessarily be different.  The April 7, 2023 Determination stated:

> Based on our review, according to your Benefit Plan, under the Section Schedule of Benefits, Subsection Physician Fees for Surgical and Medical Services, this request for payment was processed correctly:
>
> Your plan states that for In-Network these services are covered at 100% of the eligible expenses and for Out-of-Network these services are covered at 80% of the eligible expenses after satisfying your annual deductible.

> **Please note the claim in question for the above referenced date of service is processed at In-Network level of benefit.** (emphasis added)
>
> This claim was processed correctly according to your plan benefits. This claim has been reimbursed using Data iSight, which utilizes cost data if available (facilities) or paid data (professionals). The discount shown is your savings and is not included in the amount you owe. You only need to pay your co-insurance, co-payment and/or deductible listed on your explanation of benefits. If your provider bills you any other amount, please call the toll-free member phone number on your health plan ID card. If your provider has questions about their reimbursement amount, they may visit Data iSight.com or call toll-free at 1-877-859-2166.

34. On April 28, 2023, and in response to the Determination, Plaintiff wrote to UH requesting copies of all information that UH had used in making the Determination, including "[a]ll relevant information regarding your use of Data iSight to process [the] claim." UH violated its obligations under the Plan and did not produce any documentation that explained or supported Data iSight's determination of the Allowed Amounts for these services. UH's failure to produce such documents creates a negative inference that those documents would support a finding that UH processed Plaintiff's claim and adjudicated her appeal, in bad faith.

35. On June 6, 2023, Plaintiff requested a second level review from UH and in support submitted another letter from provider Dr. Talmor.

36. On June 25, 2023, UH informed Plaintiff that it was upholding it April 7, 2023 Determination. UH's explanation was identical, verbatim, to that of its April 7, 2023 letter. Again, UH stated that it had processed Plaintiff's claim at an In Network level of benefit using the cost data provided by Data iSight, and that Plaintiff did not owe Dr. Talmor the difference between UH's calculated Allowed Amount and the amount billed by Dr. Talmor.

37. UH's two determinations on appeal, dated April 7, 2023 and June 25, 2023 (the "Determinations") are internally inconsistent and at variance with the terms of the Plan. The Determinations state that the claim was processed at an In Network level of benefit, but then

explain that UH used Data iSight's cost data to determine the amount of reimbursement. But UH used Data iSight to process Plaintiff's claim on December 6, 2021, when it claimed in the EOB that the Allowed Amounts were based on the fact that Dr. Talmor was an out-of-network provider. The Determinations violate Plaintiff's rights under both the Plan and the Women's Health and Cancer Rights Act (the "WHCRA"), which the Plan adopted. Dr. Talmor is an out-of-network provider who received prior approval from UH to perform the September 14, 2021 procedures, and then charged rates for those procedures in line with rates cited in FAIR Health, Inc.'s UCR database, the very database UH committed to follow in its Certificate of Coverage. But rather than reimburse Plaintiff the FAIR Health rate at the 80th percentile, as UH was obliged to do under the Certificate of Coverage, UH instead processed this claim at an In Network level of benefit and only paid 20% of what Dr. Talmor charged for her work, and wrongly advised Plaintiff that she did not have to pay Dr. Talmor anything above this amount. Dr. Talmor, however, is not an In Network provider and did not agree to accept the In Network rate for her services. Section IV.G. of the Plan further provides that out-of-network providers can charge Members the difference between the Allowed Amount, at the 80th percentile of the FAIR Health Rate, and the amount billed. By the Plan's own terms, Plaintiff is entitled to reimbursement at the out-of-network rate of 80% of the FAIR Health Rate, when, like here, those rates are available. In processing Plaintiff's claim at an In Network level of benefit, and reimbursing at only 20% of the billed amount, UH has denied Plaintiff her rights under the Plan.

38. UH acted arbitrarily and capriciously when it processed Dr. Talmor's September 14, 2021 services for Plaintiff at an In Network level of benefit. Dr. Talmor is an out-of-Network provider. It is inconsistent that UH processed Plaintiff's claims for Dr. Talmor's surgical services on November 30, 2021 at an Out of Network level of benefit and reimbursed Plaintiff at least

13

80% of the FAIR Health rate for those services, but refused to process the September 14, 2021 services performed by Dr. Talmor at this same level of benefit.

39. UH's decision to deny Plaintiff's claim and appeals for coverage was arbitrary and capricious.

40. UH's initial decision denying plaintiff's claim, and its two internal reviews, were made in bad faith in order to deny Plaintiff's claim and avoid the significant costs associated with providing the benefits to which Plaintiff is entitled under the terms of the Plan.

41. Plaintiff has exhausted her internal reviews with respect to her claim for coverage of Dr. Talmor's September 14, 2021, services, under the Plan.

**AS AND FOR A FIRST CAUSE OF ACTION**
**(Claim for Benefits, 29 U.S.C. §1132(a)(1)(B))**

42. Plaintiff realleges and incorporates herein by reference the allegations set forth in Paragraphs 1 through 41 above.

43. The September 14, 2021 services provided to Plaintiff by Dr. Talmor were pre-authorized Out of Network procedures that the Plan was obliged to cover at "the FAIR Health rate at the 80th percentile."

44. UH's decision to deny Plaintiff's claim for reimbursement at the FAIR Health rate at the 80th percentile on December 6, 2021, and its Determination in two subsequent reviews to process her claim at an In Network level of benefit, were arbitrary and capricious.

45. UH processed Plaintiff's claim in bad faith. Having given Dr. Talmor prior authorization to perform the two procedures, UH knowingly refused to consider the data information that was prescribed under the Plan and adhered to by Dr. Talmor in setting her fees, to avoid a reimbursement rate at 80% of the FAIR Health rate, which constitutes bad faith.

46. On information and belief, UH's bad faith and actual conduct in processing and adjudicating Plaintiff's claim and appeals, create a conflict of interest for UH in resolving Plaintiff's claim for benefits under the Plan.

47. In addition, or in the alternative, the decision by UH to deny Plaintiff's claim and appeals is not entitled to arbitrary and capricious review, and the denial is not justified under a *de novo* standard of review.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment and relief as follows:

A. Ordering the Defendant UH to award Plaintiff the "FAIR Health rate at the 80th percentile for both procedures performed by Dr. Talmor on September 14, 2021, with interest; and

B. Awarding costs and attorney's fees to Plaintiff pursuant to 29 U.S.C. §1132(g); and

C. Ordering such other and further relief as the Court may deem just and proper.

Dated: New York, New York
       January 12, 2024

                                                      Respectfully Submitted,

                                                      ABBEY SPANIER, LLP

                                                      By: */s/ Julie Sullivan*
                                                      Julie Sullivan
                                                      212 East 39th Street
                                                      New York, NY 10016
                                                      Tel: (212) 889-3700
                                                      jsullivan@abbeyspanier.com
                                                      *Attorneys for Plaintiff*

# EXHIBIT 1